RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 17 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re ANDREW W. BELL ) | Case No. |
| ) | |
| PETITIONER, pro se ) | **1:21-CV-2486** |
| ) | |
| vs ) | |
| ) | |
| Brad Raffensberger, Secretary ) | PETITION FOR WRIT OF MANDAMUS |
| of State of the State of Georgia and ) | |
| Chris Harvey Director of Elections ) | |
| for the State of Georgia ) | |
| ) | |
| RESPONDENTS ) | |

## INTRODUCTION

The Petitioner returned from home from visiting family and friends in Charleston, SC Carolina on June 14, 2020 upon checking his post office box he came across the Georgia Supreme Court order which denied the Petitioner's motion for reconsideration.

Mr. Bell's nomination petition was certified with 2,200 signatures on August 19, 2020. However, Mr. Bell received a letter on via email on September 4, 2020 stating that he only had 827 valid signatures. Mr. Bell exercised his appellate rights under O.C.G.A. § 21-2-171(c) at the earliest possible time on September 8, 2020. There was a hearing scheduled for September 15, 2020. An attorney representing the Secretary of State of the State of Georgia, Mike Skedsvold, sent Mr. Bell and the trial court an email that had three documents attached on September 14, 2020 at 8:26 p.m. The Senior Staff Attorney to the Honorable Kimberly M. Esmond Adams acknowledged receipt of the documents the following morning September 15 at 9:38 a.m. However, Mr. Bell informed the both the trial court and the attorneys representing the Secretary that he noticed that an email had been sent but he had not had a chance to review the documents. Those documents include (1) an affidavit of Chris Harvey, (2) Pre-hearing brief regarding plaintiffs application for writ of mandamus and injunctive relief, (3) a document showing the certified nomination petition with a validated signature showing 2200 valid signatures and an unsigned letter with a Dekalb County Georgia letterhead showing 827 signatures.

Although it can be argued that the Secretary's representative performed his duty to his client. It can also be argued that the actions of the Secretary's legal counsel were intentional and designed to deceive both the trial court and Mr. Bell. What cannot be argued is that the actions of the Secretary and his counsel placed Mr. Bell at a major disadvantage in Mr. Bell's ability to

2

prepare for the September 15 hearing. The trial court missed the fact that 2200 validated signatures had been certified.

I

## RELIEF SOUGHT

Petitioner Andrew W. Bell, hereby petition, this Honorable Court to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651 and under Rule 21 of the Federal Rules of Appellate Procedure, to set aside both the order issued on September 17, 2020 (see **Exhibit P** pg.1 of 2) from Judge Kimberly M. Esmond Adams in the trial court that stated there was no evidence presented that Mr. Bell had collected enough signatures to be on the ballot. and the Georgia Supreme Court decision that stated the Mr. Bell's case is moot. There have been other elections that have been set aside and a new election ordered {Gasaway vs. Laurel Ellision, Chris Erwin,et al. (Civil Action No.: 18-CV-249). House District 85 is located in one county (Dekalb). There would be no need for the Respondents to print ballots for the whole state. The District has approximately 40,000 registered electors that vote in 17 precincts at approximately 14 locations. The new election would not affect a third party because the incumbent ran unopposed in her primary and Mr. Bell's name was not placed on the ballot for the November 3, 2020 General election.

Due to the fact Mr. Bell plans to run as an Independent for elected office again there are issues of due process that are capable of repeating themselves. The issues concerning the review of nomination petitions are ongoing. They have affected Mr. Bell and other Independent and third party candidates in the past and if the legislature does not amend, change, or eliminate 21-

2-170(b)(c)(d)(e) or 21-2-171 (b)(c) it will effect Mr. Bell in the future as an Independent candidate for Georgia House of Representatives District 85.

In addition, Mr. Bell asks this Court to find O.C.G.A. 21-2-170(b)(c)(d)(e) unconstitutional based on its violations of the first and fourteenth amendments.

The Petitioner also respectfully prays that this Court award the petitioner the costs of this action together with reasonable pro se fees under 28 U.S.C. § 2412 and 42 U.S.C. § 1988; and retain jurisdiction of this action and grant Petitioner any further relief which may be in the discretion of the Court be necessary and proper.

## II

## JURISDICTION and VENUE

2. This Court has original jurisdiction over this case under Article III of the U.S. Constitution, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure; 28 U.S.C. §1331, 28 U.S.C. §1343(a)(1)(2)(3)(4), and 28 U.S.C. §1344

3. This suit is authorized by 42 U.S.C. § 1983

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202

5. Venue is proper in the Northern District of Georgia 28 U.S.C. §1391(b) and in the Atlanta Division under Local Rule 3.1.

## III

## ISSUES PRESENTED

The nomination petition was certified with 2200 signatures on August 19, 2021. However, there was another unsigned paper on a Dekalb letterhead that was used to deny Mr. Bell's entry on the November 3, 2020 ballot. Can the Secretary of State of the State of Georgia use a different

nomination petition form to validate and certify Mr. Bell's signatures and use a different form to validate and certify other Independent and third-party candidates that are required by O.C.G.A. 21-2-170 to collect signatures?

If the trial judge errored in not reviewing the documents (the nomination petition) submitted by the Respondents should the Petitioner be penalized by the trial court's error?

Does O.C.G.A. § 21-2-171(b) allow subjectivity and human error into the verification process?

Was the Georgia Supreme Court correct in stating that the issues Mr. Bell raised before the Georgia Supreme Court are moot?

Do the two different standards for statewide candidates versus non-statewide candidates violate the Equal Protection Clause of the fourteenth amendment? Statewide candidates are only required to collect 1 percent of the total number of registered voters while non-statewide candidates are required to collect 5 percent of the total number of registered voters O.C.G.A. § 21-2-170 (b).

Does O.C.G.A. §21-2-170(b)(c)(d)(e) place a severe burden on the candidates circulating a nomination petition?

Does O.C.G.A. § 21-2-170(c) deny due process by imposing a series of unreasonable procedural obstacles upon the candidacy of an individual that is required to collect signatures for a nomination petition under O.C.G.A. 21-2-170(a)?

## IV

## STATEMENT OF FACTS

On March 2, 2020 Mr. Bell submitted is nomination for candidacy for the Georgia House District 85 election to be held November 3, 2020. Mr. Bell submitted his candidacy as an Independent. Being Mr. Bell submitted his candidacy as an Independent he was required to collect signatures from registered electors in his district in accordance with OCGA 21-2-170. In Mr. Bell's case he was required to obtain 1793 qualified signatures. Mr. Bell's signature requirements were reduced to 1255 after a ruling In July, the United States District Court for the Northern District of Georgia entered preliminary injunctive relief lowering the signature petition requirement by 30%. *Cooper v. Raffensperger*, 1:20-cv-01312, 2020 WL 3892454 (N.D.Ga. July 9, 2020). The *Cooper v. Raffensperger* decision stated that although the ongoing COVID-19 crisis placed a burden the Plaintiffs, the State of Georgia election scheme was only moderate and not severe. Since that time the public has been informed that the virus was and still is an airborne contagion.

The governor of the State of the State of Georgia imposed justified restrictive orders beginning no later than 04/01/2020. Those orders were in effect until April 8, 2021. Those orders gave no exemptions to persons circulating petitions. Mr. Bell filed his nomination petition with Mr. Raffensberger's Elections Director Chris Harvey on August 13, 2020 according to OCGA 21-2-171 (a)(b).

The Secretary is required by OCGA 21-2-171(b) to expeditiously examine the petition. *"Upon receiving the filing nomination petition, the officer with whom it is filed shall began expeditiously to examine the petition to determine if it complies with the law."* After keeping Mr. Bell's nomination petitions for twenty-two (22) days, the Secretary notified Mr. Bell at 4:56 on Friday September 4, 2020, before the labor day holiday, that he would not be on the November 3, 2020 General election ballot because there were only 827 signatures that were verified during

the examination process. Mr. Bell was not properly notified by the Secretary. Mr. Bell received an email (see **Exhibit E**) on September 4, 2020 with a letter attached. The attached letter was dated August 28, 2018. The Defendant's letter did not include the name of the current Secretary of State of the State of Georgia. Mr. Bell's first time running for any type of public office was when he qualified as a candidate for the positions he seeks, on March 2, 2020. Upon learning of the Secretary's decision Mr. Bell made an open records request for the examined verified petitions, on September 5, 2020 (see **Exhibit F**). Mr. Bell used his appeal rights granted him in O.C.G.A 21-2-171 (c)[1] and filed for an Emergency Application for Writ of Mandamus and Injunction Relief in the Superior Court of Fulton County on September 8, 2020, in accordance with O.C.G.A. 21-2-171(c).

4. Mr. Bell did not receive the open records request that he requested. Mr. Bell needed a copy of the examined petitions to find out the names of the petitioners that were rejected by the Secretary before the assigned emergency hearing on September 15, 2020. In turn the Mr. Bell made his request for discovery on September 11, 2015 (see **Exhibit H**). There was an emergency hearing via Zoom scheduled in the Superior Court of Fulton County on September 15, 2020 at 10:00 a.m. By the time of the hearing Mr. Bell still had not been provided the requested discovery, nor did the Court compel or demand that the Secretary provide the requested discovery to Mr. Bell. However, the Respondents through one of their representatives, Mike Skedsvold, submitted evidence to the trial court and Mr. Bell. At minimum the evidence provided should have proven to the trial court that Mr. Bell had enough signatures to be qualified to access the ballot. The evidence also shows that there was interference and/or

---

[1] O.C.G.A. 21-2-171(c) states, "It shall be the duty of the appellate court to fix the hearing and to announce its decision within such a period of time as will permit the name of the candidate affected by the court's decision to be printed on the ballot if the court should so determine.

7

tampering involved in the process. On September 17, 2020 the Court denied Mr. Bell's petition *"Because Plaintiff cannot make a showing that his nomination petition was wrongfully denied, he has not asserted a clear legal right to relief as required by the mandamus statute."*

Mr. Bell's case was docketed in the Georgia Supreme Court on September 22, 2020 under the case number SD1D0206. Mr. Bell received a letter from the Supreme Court dated September 30, 2020 and postmarked September 30, 2020. The September 30, 2020 letter granted Mr. Bell's application for appeal. Mr. Bell filed his original notice of appeal with Fulton County Superior Court on October 5, 2020 and due to a clerical error Mr. Bell filed an amended notice of appeal on October 15, 2020 in Fulton County Superior Court (see **Exhibit I**). The appeal was docketed on October 16, 2020 under the case number S21A0306. The correspondence notifying Mr. Bell the case had been docketed was mailed on October 19, 2020 (**see Exhibit J**). Mr. Bell continued to follow the instructions from the Georgia Supreme Court even though his rights under O.C.G.A 21-2-171 (c) had long since been ignored and violated. On October 29, 2020 Mr. Bell filed his brief. On the November 18, 2020 the response brief of Mr. Raffensberger was docketed. On November 30, 2020 the reply brief of Mr. Bell was docketed. The Georgia Supreme Court finally made its decision on May 3, 2021. Mr. Bell's Motion for Reconsideration was denied on June 1, 2021.

**V**

### REASONS WHY WRIT SHOULD BE GRANTED

Mr. Bell stated in his original application with Supreme Court of Georgia, the incumbent was unopposed. There has never been nor is there now a need for a statewide election in order to provide a new in election for the Georgia House District 85 seat. The seat for Georgia House of Representatives District 85 only encompasses a small

portion of one county (Dekalb). Georgia House District 85 has approximately 40,000 registered electors, and Dekalb county has allotted 17 voting precincts for that district. The incumbent had or has no guaranteed right to run unopposed for election. It is the right of qualified voters, regardless of their political beliefs, and the right of qualified voters, regardless of their political persuasion, "to cast their votes effectively" for the candidate of their choice. Williams v Rhodes, 393 U.S. 23, 30 (1968). The registered electors of Georgia House District 85 should not be deprived of their right to cast a vote for the candidate of their choice. Mr. Bell met his burden of obtaining the required number of nomination petitions. Mr. Bell's right to seek office granted him under the first and fourteenth amended as well as O.C.G.A 1-2-6(a)(5) were violated. Mr. Bell had significant support in his district as is confirmed by the 2,220 verified nomination petitions that were verified August 19, 2020 (**Exhibit III** pg. 1). Therefore, the fact that his name was not placed on the ballot in time for the election or the fact that a new election has not been granted has denied not only Mr. Bell but the registered electors Georgia House District *85* of their 1st and 14th amendment rights.

The Georgia Supreme Court deemed that due to the November 3, 2020 general election now being over and the election results having already been certified that the Court is no longer capable of granting the type of relief that Mr. Bell requests.

Under Article III of the United States Constitution courts when it comes to the issue of mootness, may adjudicate actual ongoing cases or controversies. Mr. Bell continues to have a personal stake in the outcome of the issues that he presented before the Georgia Supreme Court in case number S21A0306, due to the fact Mr. Bell's plans are to continue to run as an independent candidate, the issues surrounding his case continue to be ongoing

controversies. Along with the fact the Mr. Bell has plans on continuing in politics as an Independent, there has been conduct demonstrated by the Office of the Secretary of State of Georgia that routinely rejects signatures from nomination petitions and in Mr. Bell's case the Respondents provided unverified documentation, that could very well be fraudulent. The only stated verification states that Mr. Bell's petition contains 2,200 valid signatures. There was an additional memo but it was not provided by the Secretary of State of State of Georgia's office. The statement[2] made on August 19, 2020, in regards to, Mr. Bell's signature verification reveal two facts. The first being the attached memo was provided by the Secretary of State of the State of Georgia's office. Therefore, the memo with the Dekalb County letterhead (**Exhibit III** pg.2) is obviously a fraudulent document and secondly the memo from the Respondents is missing. The memo should exactly like the one provided to other Voter Registration offices in other counties (**Exhibit IV** pgs. 2-5). The false document was used to prevent Mr. Bell from being placed on the ballot. Many of the issues, actions, and circumstances that have arisen in Mr. Bell's case are capable of repetition, yet they are evading review. Under O.C.G.A. § 21-2-562 (2)(3) there is an obvious crime that was committed.

No party shall lose any right by reason of the failure of the officer to discharge his duties when the party has been guilty of no fault himself and has exercised the discharge of such duties O.C.G.A. § 9-6-22. Mr. Bell informed the trial court as well as the Supreme Court of Georgia, that the review of the decision of the officer denying his nomination petition was not being handled expeditiously as required by 21-2-171 (b}(c). The

---

[2] This is to certify that the County Voter Registration Office has reviewed the referenced nomination petition and has determined that the petition contains 2.200 valid signatures, as per the attached memo provided by the Secretary of State for verifying signatures on the nomination petition for the November 3, 2020 General Election.

Supreme Court of Georgia excuses its own responsibilities by placing blame on Mr. Bell for not placing the statement, which is a sentence contained in O.C.G.A. 21-2-l71(c)[3] in his application. There is nowhere in the O.C.G.A. 21-2-171(c) or in the Supreme Court rules or procedures that states that in order for Mr. Bell's rights to be upheld in accordance with 21-2-171(c) that the afore mentioned sentenced had to be placed in his application.

In fact, throughout this appeal process Mr. Bell's right to seek justice has been hindered by both the Fulton County Clerk's office and the Supreme Court of Georgia's clerk's office. Mr. Bell's first filing for his appeal under 21-2-171(c) was made on September 8, 2020. The trial court ruled September 17, 2020. The trial court process should have moved in a more expeditious manner as well. The trial court errored in its decision to grant the Respondents five working days in which to have a hearing. The jurisdiction of the trial court was under 21-2-171(c) which does not grant the reviewer, which in this case is the Respondents, any sovereign immunity. The statue clearly states, "It shall be the duty of the appellate court to fix the hearing and to announce its decision within such a time as will permit the name of the candidate affected by the court's decision to be printed on the ballot. In a similar case Anderson vs. Poythress {No. C80-167A; USDC (N.D. Ga Sept 26, 1980)}, the trial court held a hearing within three calendar days. Exactly forty years to the day of Mr. Bell's appellate filing, *"on September 8, 1980, John B. Anderson*

---

[3] It shall be the duty of the appellate court to fix the hearing and to announce its decision within such a period of time as will permit the name of the candidate affected by the court's decision to be printed on the ballot if the court should so determine.

11

*and his electors filed suit in the Superior Court of Fulton County seeking to require the Secretary to place them on the ballot. **The superior court heard the matter on September 11, 1980.**"* In Mr. Bell's case 40 years later, his case was heard on September 15, 2020. "*Anderson (although the order does not give the docket date) appealed the decision to the Georgia Supreme Court, which was under an obligation pursuant to GA. CODE ANN. § 34-1011(c) "to announce its decision within such a period of time as will permit the name of the candidate affected by the court's decision to be printed on the ballot, if the court should so determine. **On September 25, 1980, the court announced its decision affirming the judgement of the superior court.**"* In Mr. Bell's case his case was docketed on September 22, 2020 and the Georgia Supreme Court made its decision on **May 3, 2021.** Unfortunately, for Mr. Bell it seems as though the process for independent candidate to get on the ballot in Georgia has not improved but it has deteriorated to the point where a candidate has to wait months for courts to make a decision to place a candidate on the ballot and when they finally make a decision they assert that the candidate claim is moot because the election had already passed months earlier. However, the purpose of 21-2-171(c) is supposed to provide due process to the candidate that would allow him or her the opportunity to access the ballot.

    The O.C.G.A. § 21-2-171(c) denies the Independent candidate due process. In Mr. Bell's case he was notified 4 four minutes before the close of business on a holiday weekend. Therefore, to find an attorney before Tuesday is nearly or most likely impossible. Tuesday would be the fourth day and Wednesday would be the

fifth. Even if a candidate were to find an attorney on the fourth day the likelihood that they would be able to familiarize themselves with all of the issues and write the writ of mandamus in one day is also nearly or most like impossible. In turn, more than likely most candidate will lose their appellate rights due to time constraints. In Mr. Bell's case he had some legal studies classes, a lot of experience researching the law, and experience in filing suits against federal bureaucracies. In turn, Mr. Bell was able to submit his writ of mandamus before the deadline, but Mr. Bell is most likely an anomaly not the norm. When most people need to deal with a legal problem, they hire a lawyer to aid and assist in their legal process. O.C.G.A. § 21-2-171(c) is not constitutional due to the fact it takes away the candidate's right to due process. O.C.G.A. § 21-2-171(c) does not give a candidate enough time to consult with or hire an attorney to represent them.

The Georgia law 21-2-170(a) requires that those candidates who are not nominated at part primaries, have to access the ballot through nominations petitions. The Supreme Court has upheld ballot access requirements in cases like Jenness v Fortson, 403 U.S. 421 (1971). The Supreme Court found that there was an important state interest in requiring some initial showing of a significant medium of support before a candidate could be included on the ballot. However, the way the law is implemented through 21-2-170(b)(c)(d)(e) is unconstitutional.

*"In 1943, the State enacted the predecessor of its current ballot-access requirement, which allowed third-party candidates to gain access to the ballot in one of two ways: (1) if the political party received 5 percent of the votes in the last general election for the office in question, which*

*guaranteed ballot access; or (2) by gathering petitions signed by 5 percent of all of the registered voters in the state or district. 1943 Ga. Laws 292. In 1986, the State substantially loosened its ballot-access requirements—but on with respect to statewide candidates...the legislature left unchanged the 5 percent petition requirements for third-party and independent candidates for non-statewide offices     Cowen, Buckley vs Georgia Secretary of State 1:17-cv-04660-LMM (N.D. Ga. June 3, 2020)."* The very fact that there are two different standards for statewide candidates versus non-statewide candidates violates the Equal Protection Clause of the fourteenth amendment. It's not as easy as one might think to go out and gather signatures, in turn a 1 percent standard across the board should be enough of a standard to demonstrate that a candidate has significant or medium support from the electorate in the jurisdiction that that candidate seeks to hold political office. Therefore, in order for O.C.G.A. §21-2-70 (b) to be meet the standards of the United States of America's Constitution under the 14th amendment, the Constitution of the State of Georgia under Article I, Section I, Paragraph II, and O.C.G.A. §1-2-6(a)5; This Court should use it authority to strike down O.C.G.A. §21-2-170(b) as unconstitutional and direct the Georgia legislature to find a standard for all third party and independent candidates i.e. (all third party candidates statewide and non-statewide should be held to the same 1% standard).

    O.C.G.A. §21-2-170(b)(c)(d)(e) places a severe burden on the candidate circulating the petition. During a pandemic the law has placed an even more tremendously severe burden on the Petitioner. Article I, Section I, Paragraph I of the Constitution of the State of Georgia states, "no person shall be deprived of life, liberty, or property except by due process of law. The public now knows how contagious the COVID-19 virus is and the local, state, and federal governments have issued recommendations, protocols, and restrictions in order to minimize the spread of the

virus, in order ultimately minimize loss of life. The fact that the Rospondents suggests that O.C.G.A. § 21-2-170(c)(d)(e) does not place a severe burden on the Appellant is appalling. This Court should also strike down O.C.G.A. § 21-2-170(b)(c)(d)(e) as unconstitutional being that it provides no alternatives for protecting petition circulators during times of major disease, pandemics, or natural disasters. By definition of collecting signatures it forces the petition circulator to come into contact with the public during a pandemic.

Any law that would endanger the lives of others should be deemed unconstitutional. If the legislature should feel that O.C.G.A. § 21-2-170(a) should be necessary for independent and third-party candidates, the legislature should not be allowed to include sections O.C.G.A. § 21-2-170(b)(c)(d)(e) in the statute. This Court has the authority to have strike down parts of this law and provide instructions to the Georgia legislature.

O.C.G.A. § 21-2-171(c) states that a writ mandamus must be made within five days of the time when the petitioner is notified that their nomination petition was denied. There are several problems constitutional problems with O.C.G.A. § 21-2-171(a)(b)(c). In years past, O.C.G.A. § 21-2-171(a)(b)(c) may have seemed to be reasonable legislation but the law depends too much on human interaction and subjectivity. It can be likened to sports before instant replay. There came a time when the public new there was technology that existed that did not exist before. This technology was viewed as being necessary to ensure that appropriate decisions were made, those decisions that could decide the winners and losers of entire games or contests. The time has now come for Georgia and the United States of America to eliminate as much human interaction, subjectivity, biased, and/or prejudice as possible. There is so much technology that exist today that would bring more integrity to electoral process. The electorate, the candidates, nor the certifying officials should have to continue to accept, rely, or depend on the processes of

O.C.G.A. § 21-2-170(c)(d)(e) and 21-2-171(a)(b)(c) because there is technology that exist that would drastically improve the process. During Mr. Bell's time of circulating the nomination petitions he had to convince several people that it was alright to provide certain information like date-of-birth (DOB) and their addresses. Some people were afraid of identity theft, others did not want to give their address for security, there were other electors who had other problems with signing the petition, and there were many people who just did not want the circulators to approach because of the COVID-19 pandemic. The fact that law has denied the electors to petition for a candidate of their choice and has denied Mr. Bell his right to run for office O.C.G.A 1-2-6(a)(5), are violations the first and fourteenth amendments.

There were obvious malicious attempts by the Respondents to prevent Mr. Bell from being placed on the November 3, 2020 General election ballot. It starts with the fact the Respondents were aware that Appellant qualified to be on the ballot August 19, 2020 yet notified Mr. Bell September 4, 2020 that he did qualify to be on the ballot. The notification (**Exhibit A**) was in a letter from the Office of the Secretary of State dated August 28, 2020 the Respondents stated, "Upon review of the signatures you submitted to our office, I hereby inform you that your total number of valid and verified signatures submitted is 827." However, in a letter from the Secretary of State's office dated August 19, 2020 the Respondents stated that there were 2220 valid signatures. After appealing the matter to the appropriate court O.C.G.A. § 21-2-171(c) the Respondents' counsel used methods to dissuade not only Mr. Bell from the truth but the trial court as well. The Respondents continued to assert that Mr. Bell did not have enough signatures and the Respondents continued to use as evidence an unsigned document with a Dekalb County, Georgia Board of Registration and Election letterhead (**Exhibit III** pg.2) instead of the form issued to the other counties (**Exhibit IV** pgs. 2-5)

Secretary Raffensperger stated that, "Sovereign immunity forbids courts from entertaining a lawsuit against the state without its consent. Secretary Raffensperger is protected by this immunity because a suit against a state officer in his official capacity amounts to a suit against the state itself. Thus a suit like this one is only permitted if the plaintiff shows the state has waived its immunity for his claims—which can be given by the Constitution itself or by a clear act of the Generally assembly." The State of Georgia Constitution does give the Petitioner the right to bring this suit against the Respondents. Article I, Section II, Paragraph IX (d) states, "Except as specifically provided by the General Assembly in a State Tort Claims Act, [all] officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. The actions of the Office of the Secretary of State of Georgia are beyond negligent, and the fact that they continue to assert that Mr. Bell did not have the required 1,255 signatures even though the Respondents own records show Mr. Bell had more than the required number of signatures (2,220) on August 19, 2020, shows that Appellee actions are with malice. Therefore, Appellant still has the right to bring this petition under several statues listed above in the jurisdiction section.

Respectfully submitted this 17th day of June, 2021

*Andrew W. Bell* (signature)

Andrew W. Bell

## CERTIFICATE OF SERVICE

I certify that I have this day served Brad Raffensperger Secretary of State of Georgia and Chris Harvey State of Georgia's Elections Director (opposing party or attorney) with a copy of this Notice of Intent by sending a copy, first class postage paid, through the U.S. Mail or by email with the agreement of the (opposing party or attorney) to him/her at: Christopher M. Carr, Bryan K. Webb, Russell David Willard, Charlene S. McGowan, and Miles Christian Skedsvold **Certified Mail Receipt No. 7017338000105729205**

Office of the Georgia Attorney General
40 Capital Square SW
Atlanta, GA 30334

## CERTIFICATE OF SERVICE

I certify that I have this day served the Honorable Kimberly M. Esmond Adams with a copy of this Notice of Intent by sending a copy, first class postage paid, through the U.S. Mail or by email with the agreement of the (opposing party or attorney) to him/her at: **Certified Mail Receipt No. 70173380000105729182**

185 Central Ave SW
Atlanta, GA 30303

## CERTIFICATE OF SERVICE

I certify that I have this day served the Supreme Court of Georgia with a copy of this Notice of Intent by sending a copy, first class postage paid, through the U.S. Mail **Certified Mail Receipt No. 70173380000105729199**

The Supreme Court of Georgia
~~40 Capital Square SW~~    330 Capitol Avenue, S.E.
Atlanta, GA 30334

_____
(Sign your name.)

P.O. BOX 82348
ATLANTA, GA 30354

(404) 380-0037

electandrewbell@gmail.com

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 17th day of June, 2021,

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES January 11, 2025

18